24-1091 May it please the court, my name is Harlan Protus and I am here representing Defendant Appellant Gurmeet Singh Dhinsa. I fully recognize that Dhinsa's case is an old case. He was arrested in July of 1997. He was convicted at trial in January 1999 after a four-month trial represented by Jerry Shargell. Benton Campbell, who rose to become the U.S. Attorney in the Eastern District, was the prosecutor on the case. But just because Dhinsa's case is old, and just because it emanates from an amended judgment that could have been, but was never entered years ago, doesn't mean that his appeal is jurisdictionally defective and does not mean that the substantive issues that he raises do not have merit. Counsel, even assuming that we can go back and look at this because of a judge did not formally make a final order, which is dubious, but even assuming that, aren't your claims lost anyway? The Booker claim does not stand up under our cases, and the Apprendi case, which might, is barred by the fact that the overwhelming evidence is such that any Apprendi error would be harmless, and Apprendi is subject to harmlessness rule. So if that is so, then you don't have anything now, no claim to be re-sentenced, specifically because of a very narrow exception of powers, which even I and Kaizu insisted on in the face of some argument by another judge on this court. Who was right? Whichever, I mean, even I who was most your way would say this is a case that is barred in vain. Well, thank you for that question, Judge. As I understand it, what you're saying, and correct me if I'm wrong, and I want to make sure I get your question correct, is that even if the court determines that it has jurisdiction, and even if it rules in your way, Mr. Protestant, even then you lose because your client is serving mandatory minimum life sentences. Yeah. So that essentially would be true. Well, you have, we have to say that your claim against the other sentences, the Apprendi claim, fails because obviously if the other life sentences are thrown out, then it's a different situation. Right. Well, I have a number of answers to that, Judge. I mean, obviously, the initial appeal was decided before Apprendi and before Booker, so the court did not have the benefit of those decisions when sentencing Mr. Dinsa. Secondly, it's impossible to know what the effect of Apprendi or Booker would have had on those sentences. And not every offense for which Mr. Dinsa was convicted was a life mandatory minimum sentence. And that has collateral consequences as well as to the conditions of confinement, his placement within the BOP, his eligibility for programming, and certain other things that I don't think that many defense lawyers really think about because it's not legal, legal, but it is the real life of our clients. It's also impossible to know what future legal developments, legal or otherwise, might impact Dinsa's mandatory minimum sentences. And I think most importantly, if you're going to sentence someone for the remainder of their life without any way to get out of prison, it has to be done the right way. And in this case, it was not done the right way. And when the consequences are as high as they are here, my view, I think our view, is that things have, all the I's have to be dotted, all the T's have to be crossed. Well, can I ask a different, slightly different version, perhaps, of that question? Aren't you really attacking this court's decision in the direct appeal of the conviction? Because as I read our mandate in the case, it says, we affirm the judgment of conviction and sentence on all counts. We vacate the judgment of conviction only on the three counts and remand it only for the following purpose, which is to have a new trial if the government wants one. The government didn't want one. Now, I'm prepared to assume that the, and I think I'd be prepared to rule, that the fact that the district court never entered a new judgment means we are now looking at the district court's judgment that came, from which you have appealed in a timely way. But where, what is wrong with that judgment? Because all the judgment does is to execute exactly what we asked the district court to do. Right. That's absolutely correct. The new judgment, which Mr. Dinsett asked for because of the impact on his DOP conditions of confinement, did what this court told it to do. To do, yes. Way back when. Right, that's right. But now what we have in front of us is an amended judgment. And it is if, if it didn't. But why doesn't the mandate rule preclude you from attacking that judgment? You may have a collateral attack of some sort. That would be a How did the district court, how can you say that the district court erred in failing to re-sentence? I mean, I think that's the argument. Yes. That the error was failure to re-sentence. Yes. When we never asked for a re-sentencing, we never ordered a re-sentencing. We didn't even remand for further proceedings consistent with this opinion, which leaves open the possibility that one proceeding could be a re-sentencing. But we very specifically told the district court, have a new trial on these three counts if the government wants them, wants one. The government didn't want one. So if the judgment had been entered right away and appealed right away, you would still face the mandate rule. But we're seeking de novo re-sentencing. And I agree with you, Judge, to a certain extent. But I would also say that I'm not attacking what this court did when it heard the direct appeal initially. What I'm saying is asking this court to apply U.S. v. Rigas and U.S. v. Quinteri, if I'm pronouncing it correctly, which says that when there has been a reversal for substantive reasons, not ministerial reasons, not a sentencing error, a conviction error, when there has been a conviction error and there's been a remand, the defendant is entitled to de novo re-sentencing. Right. And so we were wrong back in 2003 to say otherwise. I don't know if you were wrong or if the district court was wrong. We told the district court what to do and the district court did it. So we have to have been wrong. And maybe we were. I mean, that's an argument, I guess. But I'm not sure that it follows that a defendant was entitled then to re-sentencing or should be entitled now to re-sentencing because of some error in the judgment that the district court entered, which essentially followed the mandate of this court. Let me put that in a different way. If our language at that time had said, you may retry in these other cases which we have reversed, but you do not need to re-sentence in the cases that we have upheld. If we had said that explicitly, that might have been wrong, but it is what we would have said. And you couldn't come back 20 years later and attack us on that, could you, directly. And what Judge Lynch, I think, is saying is, isn't that precisely what we said, even though we didn't use those words? Well, I would never presume to stand here and say that the Second Circuit, before whom I'm hearing, was wrong. Why not? Why not? I will say that there is Second Circuit case law that says that when a case... It's very clear that when a case... I understand. I understand. And if at that time you had said, hey, Second Circuit, you are wrong, I would, at least given what I said in Caiso, say certainly you must re-sentence. But you didn't, and yet that's what we said, so that in a funny way, you're asking us now to reconsider an error that we may have made 20 years ago and which you could have claimed 20 years ago. Well, I don't think it was an error that this Court made 20 years ago. At worst, it was an omission. At worst, the Second Circuit, 20 years ago, didn't tell the District Court to do what to do about whether the defendant should be re-sentenced or not re-sentenced. Right, so... So all it did was tell them, retry, 11, 23, and 24, if the government wants to... And so where we are now is that the claim of error is he should have been re-sentenced. So let me just take you to what we're actually appealing from. Yes. So Appendix 196 is the motion that your client filed in the District Court. Yes. And it says, DINSA respectfully requests that the Court grant the motion and amend the judgment to reflect the vacatur of Counts 11, 23, and 24 and provide such notice to the BOP. Correct. That is the request for relief made in the motion. Correct, that is. Okay, that's February 15th, 2024 motion, docketed on the 27th of February. It's received by the Court, the Eastern District, then grants that motion in its entirety. Gives Mr. DINSA every ounce of the relief that he sought by issuing an amended judgment reflecting the vacatur of Counts 11, 23, and 24, and as a matter of operation of systems, it's delivered to the BOP. You don't disagree with that, right? I do not disagree. All right, and then we get a notice of appeal. This is A-208. Notice is hereby given that Mr. DINSA appeals the March 19th, 2024 decision, which is in fact the amended judgment date, March 19th, amending his judgment to reflect the removal of vacated convictions. Correct. So Mr. DINSA asked the District Court to amend the judgment to reflect the vacatur. The District Court granted him every ounce of relief he sought, and he appealed the order granting him every ounce of relief he sought. How does he have—I'm reading the notice of appeal, so I'm going to ask you, how does he have the right to do that? If you're going to tell me that's not what he appealed, I'll be interested to hear it. No, I'm not saying that he is appealing what he asked for and got. He is—that is what he is doing. No, that's not what he's doing. So what did he ask for that he didn't get that he's appealing? Hear me out. He appealed. He won, quote, unquote, won. He got the relief that he was seeking. Right. And an amended judgment was entered. Right. That amended judgment is a document that allows us to present the claims that we are presenting. But the issue that—hang on, hang on. He doesn't say he appeals from the imposition—the re-imposition of the identical sentence on counts one through whatever. He says what he appeals is the decision of Judge Corman amending his judgment to reflect the removal.  That's the—that's the relief he sought. And that is the relief from which he appeals. How does he have appellate standing to bring that claim when he's—how is he aggrieved by the district court doing exactly what he requested? Because he didn't say to the district court, please vacate the judgments and re-sentence me on what remains. He—or amend the judgment to reflect vacant or re-sentence me. And on appeal, in his notice of appeal, he doesn't say what I object to here is the re-issuance of this judgment without a de novo re-sentencing. He simply says I appeal from the granting of the relief that I sought. How is that permissible? We don't do that here. I think the answer—my answer would be this, Judge. And I understand the point you're making. And it's something that I have thought about. It is certainly an inconvenient fact. An inconvenient might be a—a small world— It's all right. But go ahead. I can begin. A small—small word to describe the circumstances. But the fact is that an amended judgment was entered. And there are certain things that defendants are allowed to do when judgments are entered against them. Well, but an issue— And this is one of them. But an issue— What he's doing today is one of those things. An issue must be something that was preserved and something that was argued below, right? Here, that's the argument that you're making. You're appointed counsel on the appeal. Is that right? No, I'm a private counsel. You're retained to do the appeal. Okay, I see. For the appeal. No, that's fine. So you—you are retained to do the appeal from this. But you are raising an argument that was never presented to the district court. That's fair to say, is it not? I believe—I believe so. Well, I mean— I believe so. Yeah, because I was going to ask Tron. Essentially the same question as Judge Marion. But, you know, I was going to confess that I have not combed the district court docket. So I was going to ask it in the form of, can you point me to some place in the record where Mr. Dinsa or any attorney representing him, if he ever got representation in the district court, ever presented this argument to the district judge? No, I do not believe that any lawyer ever presented this particular issue to the district. Thank you. Thank you, Judge. Thank you, counsel. We'll hear from the government. Attorney Gonzalez. Let me just start right there, because I think we can cut this short. Did opposing counsel or anyone ever appeal from the fact that he was not re-sentenced? So to answer Your Honor's question and Judge Lynch's question, appellate in this case actually did previously present this case to the district court. He did previously seek a de novo re-sentencing five years ago as part of a successive 2255 challenging count 10. And in there, he asked for a de novo re-sentencing and an amended judgment. And the district court denied both. That's in the underlying dockets 528, 530, and 537. Each of those motions contains the request for the de novo re-sentencing. The district court denied that because of the mandatory minimum life sentences citing powers, as again, the district court did here. And the district court noted that the Second Circuit's mandate by itself had modified the  The appellant here then appealed that order to this court. And here, the Second Circuit dismissed that appeal, finding that appellant did not make a substantial showing of the denial of a constitutional right to warrant a successive 2255 petition. So appellant has raised this question of de novo re-sentencing to the district court and this court. And both courts rejected that request. Earlier, Your Honor's had Well, but that was just to be very clear. I think your point is he did that in a different collateral proceeding and lost. Correct. In this proceeding, I don't want to speculate on what drove this, although it may have something to do with the fact that Mr. Dinsa had some issues with the Bureau of Prisons who seemed to be applying the old judgment. And he made some, but whatever occasion did, he asked the district court to enter a new which had never been done. It may have been effectively done, or there may be some argument that what was done was enough to trigger the right to appeal. And I think you make those arguments. But this time around, what he's asking for was simply the imposition of a new judgment to reflect what this court directed the district court to do. In this proceeding, I think you were being asked, and I appreciate you're going back to that other thing. But in this proceeding, was there any point at which the district court was asked to do a resentencing? No, Your Honor. And to Your Honor's point, the only issue that was brought to the district court was the appellant seeking to amend his judgment to reflect the vacatur of the convictions. And in his underlying paperwork, he attaches a request to BOP asking for them to show him the amended judgment with the vacatur of convictions. He does also not say that it's because of any of his conditions. He doesn't say the reason for wanting the amended judgment. But then, so I guess the next question is, as far as our jurisdiction, I'm not sure what the jurisdictional problem is with our reviewing a judgment that was entered for the first time and then appealed within the time limit for appealing that judgment. There then may be all kinds of questions about what issues could be raised in that appeal. But we clearly would have jurisdiction to review that new judgment, would we not? Your Honor, here, the court would have jurisdiction to review what the appellant is actually appealing here, which is the granting of the amended judgment under, I believe it was section 3742, instead of... But in effect, he is saying that that amended judgment is not complete enough because it doesn't order a resentencing. So he's saying that amended judgment is flawed because it doesn't give me something I didn't ask. Your Honor, I'm not sure if he's asking that specifically. I mean, there's something very odd about saying, I don't like this judgment because it didn't give me something I didn't ask. But I think that's the nature of a claim that's before us. Your Honor, I want to go back to what the amended judgment actually is and what it actually reflects here. The filing of the document was administrative. This court has held that a district court's authority on remand is limited to the issues left open by the mandate. And here, the Second Circuit, this court specified the nature of the mandate, vacate and remand counts 11, 23, and 24 should the government decide to prosecute. It affirmed all other convictions and sentences. And in 2003, the district court ordered those counts dismissed with prejudice. So that, at the very latest, closed the mandate, if not earlier, when the Supreme Court denied appellant's petition for writ of certiorari in 2001. At that time, the appellant could have brought collateral attacks to the issues he's raising right now. And had the government decided to prosecute those counts, 11, 23, and 24, and those counts were successful convictions, the appellant could have challenged those counts on direct appeal. But he would not get a second bite at the apple at the affirmed convictions and sentences. Now, the appellant claims that the district court order could not have completed the mandate, that you need a formal amended judgment document. But the United States against Gonzalez confirmed that an order has force and itself can amend the judgment and the mandate. And even here, in DENSA 3, this court noted that the judgment had been amended despite there being no formal amended judgment document at the time. In footnote 4 of this court's decision, the court, quote, observed that the district court did amend the judgment to reflect the correct value of the special assessment. And the way the district court did that amendment was through an order in which it ordered the government to pay back the special assessment fee on the vacated counts. So DENSA 3 confirms, like Gonzalez, a district court order without a formal amended judgment document can have the effect of amending a judgment. That amendment did not reopen the time to appeal here. The order to repay the special assessment did not include an order to redo the restitution and forfeiture judgment. So it was only a restitution judgment, I forget, the financial penalties that were there. And then it took quite a long time before the government announced to the district court that it was not going to pursue the vacated counts. That sure looks to me like a negotiated agreement. Is there anything in the record that reflects, though, whether there was a negotiated agreement to vacate, that the government would drop any possibility of retrying the case on the conditions that it paid back the special assessment, but explicitly not on the condition that there was any change in the financial penalties in the original judgment? Is there anything in the record that says or indicates or reflects that that was the result of an agreement between the parties? No, Your Honor, there's not. And the amended consent order has to do with, I believe, transfer of certain real estate assets. The amended consent order was after this court's remand, and it did not provide for the return of restitution on the vacated counts. So even though this court had vacated those counts, the parties, the government and the appellant, had agreed on different restitution circumstances, which did not require the return of the funds. So there was an agreement that the financial penalties would not be affected by the vacatur of those counts? I don't think it's worded that way, but yes, in effect. But that was just separate from the question of whether there was going to be a new trial and separate from the question of the special assessment. That's correct. And that's one of the things that appellant points to here, is keeping the judgment open, these restitution proceedings. But those weren't related to the remand. Those were separate, and those were done after the remand. And then the litigation that came afterwards, the recent litigation that resulted in what I'm calling the opinion DINSA 3, that was DINSA's own doing, which this court declined to hear on the merits. Now, I noted that DINSA had already asked for resentencing in a different context. I also want to note that some of the challenges, well, all of the challenges he's raising to counts 4, 8, 5, and 9, those are not appropriate for de novo resentencing. Those are actually challenges to the convictions. He's challenging the jury charges, the indictment, and he's seeking to vacate the convictions. So even if he were given de novo sentencing relief, he would not be able to bring those challenges. And he could have brought challenges to counts 4 and 8 during his direct appeal. There was nothing about the vacatur of counts 11, 23, and 24, which would have prevented those. Counsel, I think we have your argument, unless there's anything else you'd like to add? No, thank you very much, Your Honor. All right, thank you, counsel. And Mr. Protas, you've reserved two minutes for rebuttal. Yes, thank you, Your Honor. I agree with one thing that the government said, which is that it is possible, possible, that an entry on a docket sheet could somehow, in some way, be interpreted as potentially being effectively an amended judgment. But that, I think, would apply for a defendant who is out walking the streets, has a private attorney who can check PACER and read it. Mr. Dinsa, when that entry order was entered, he was in a maximum security facility. He did not have access to the internet. No one mailed that to him. Well, but we didn't. Didn't this court then later describe his convictions as having become final in 2002 in a ruling on his first habeas, or one of his habeas petitions? We said, after his conviction became final in 2002, he certainly got a copy of that ruling, right? Yes, he would have gotten a copy of that ruling. So he knows that the court believes that his convictions are final at that point, and that everything is closed. But my point is that one of the government's arguments with respect to jurisdiction is that, yes, Judge Corman didn't get around until 2024 to enter the amended judgment, but that there was an entry on the docket sheet that essentially acted as the amended judgment. But Mr. Dinsa was very active in the docket. He was filing things for the last 20 years. He does an excellent job, frankly. But it's not like he was not engaging with the court during the 20 years it elapsed. I agree. But there is a difference between someone who has access to them and someone who does not have access to an attorney, or access to the internet, or access to somebody who has access to the internet. It's just the way it is. And the whole point, I mean, Rule 4B1A of the Federal Rules of Criminal Procedure requires entry of an amended judgment. And that's the whole point of going through the formality of filing an amended judgment, or filing a specific document. But now there is an amended judgment. Correct. And he didn't appeal. From that, on the ground you are presenting to us. He didn't appeal. I mean, now there is an amended judgment. Whatever was before, now there is. Right. We have a particular appeal before us. Why should we reach out beyond that appeal? Because there is a new judgment. This new judgment essentially restarts the clock on the appeal. Of course. But then we hear what the appeal is. And what the appeal must be is from something that was raised below. I understand what you're saying, Judge. What we are saying is that he was entitled to de novo resentencing way back when. As in automatically, even if he didn't ask for it. Even if he didn't ask for it, the case law says that's what he was entitled to. The court should have known that, and the court should have done that. Okay. Thank you, counsel. Thank you both for your arguments. We'll take the matter under advisement. We'll turn next to the matter of United States v. Peddoway, 24-3076. All right. You've reserved three minutes for rebuttal. You may begin whenever you're ready. Thank you, Your Honor. Good morning. My name is Ashok Chandran here from the Federal Defenders on behalf of Dante Peddoway. Mr. Peddoway was assigned seven criminal history points, placing him in criminal history category four, based entirely on conduct from when he was 16 and 17 years old. His was precisely the kind of case that the Sentencing Commission's policy statement on age was meant for. So let me ask you, we just talked about things that were and were not raised below. So my reading of the, and I can't recall, I'm sorry if you were counsel at the sentencing, but my reading of the sentencing memo below was that it makes a 4A1.3 argument and references the policy statement, the now non-existent policy statement in 5H1.1, but I didn't see an actual either motion for departure, certainly I didn't see a departure request, or even an argument for a variance based on 5H1.1. Am I missing it? Where do I find that? I believe in that same paragraph that trial counsel cited the 4A1.3 basis for a departure based on... Can you please talk a little bit louder and more slowly? Apologies for that, Your Honor. I believe in that same paragraph that trial counsel raised the 4A1.3 basis for overstating the seriousness of criminal history. Trial counsel also said that whether styled as a departure under 4A1.3 or as a variance, the youthfulness at the time of prior offenses was a basis for a below guideline sentence. Okay, this is on Appendix 19? I believe that's correct, Your Honor. And it says the guidelines include a downward departure, it doesn't ask for one, and it says the court can note that his juvenile offenses increased the level. I guess I'm having a hard time with the extrapolation, because I don't see you appealing the denial of the criminal history overstated, which is a departure, right? That's correct, Your Honor. Okay, so we've abandoned the criminal history overstated as a departure, and we're going with an aspect of the argument that was raised below as the issue on appeal? Well, by specifically requesting a below guideline sentence, whether as a departure or a variance, and then directing the district court's attention to the 5H1.1 policy statement on age, I believe trial counsel satisfied the obligations of Rule 51 by specifically informing the district court of the action that the counsel wished the district court to take and the basis for that action. And I think that's all that is required under Rule 51, Hogan, Hernandez, and this court's precedent in OMEDA, specifically about policy statements. But if that's right, and if the argument was presented to the district court, haven't we said time and time again that we presume that the district court considered the arguments that were made to it, and we don't require a recitation that specifically says, this argument that is made in this paragraph, and is implicitly the basis for a departure argument, I don't agree with for the following reasons. We don't require that, do we? That's true, Your Honor. However, I would point this court to its decision in OMEDA, where specifically on the issue of giving respectful consideration to a policy statement, this court found that it wasn't enough that the trial court was plainly aware of the request, and even made a brief inquiry into their policy statement was about consecutive... But reading all of the district court, it didn't go into it very much. But isn't it pretty clear that it was considering the age and all of those things? I mean, now, it could have said more, let's be clear. But isn't it pretty clear that it was looking, and that's why it gave a sentence at the bottom of the guidelines, and no... I don't believe it was, Your Honor. I think there are two references to Mr. Pettoway's youth at the time of his prior offenses in the sentencing court's transcript. The first comes when the court was describing the offense conduct in those cases, and the second comes when the court is describing the history and circumstances of Mr. Pettoway under 3553A1. There's no indication that the court was considering the policy statement or the substantive analysis that it requires, which is exactly what this court found insufficient in Olmeda. Again, there too, when the defendant made a request for a concurrent sentence citing 35G1.3, and the district court even made a brief inquiry into the status of the parallel state proceedings, this court found that there was no indication based just on that inquiry that the district court had engaged in the analysis that respectful consideration of a policy statement requires, and vacated and remanded the matter for re-sentencing. Are we on plain error here? I don't believe you are, Your Honor, because again, Mr. Pettoway presented the request and the basis for it to the district court, and that's all that's... Isn't there a difference between an argument that the sentence was unreasonable because of a failure to consider something, and an argument that there was an insufficient explanation? I mean, that's the sort of thing where I get a little prickly about the plain error rule and want to ask, well, where is there any incentive for a lawyer to say, oh, judge, you didn't explain why you didn't do this? Because judges are often going to be very happy to explain it if you ask them to explain it. But if you just sit silent and then come up on the Court of Appeals and raise that issue, isn't that exactly what the plain error rule is about? Well, Your Honor, I think the plain error rule in Bill 51 is a functional analysis to ensure that a trial court has an opportunity to address the relevant objections or issues raised by a defendant or by... Yeah, but there's a difference, isn't there, between the issue of was the sentence fair where it was presented to the court clearly that there was an argument for why there should be leniency, and a specific argument that respectful consideration requires saying something more. In other words, as to that, why shouldn't there be a requirement that plain error applies unless counsel says, Your Honor, I think you may have overlooked this policy statement. And then the district court could say, oh, the Sentencing Commission supports your argument? Well, that's another matter. Now let me think about that some more. Or else says, no, I'm perfectly aware of that. I just don't think it works here for the following reasons. Giving the judge the opportunity, in other words, to give, to grapple with the... In other words, counsel, isn't this exactly the situation where sandbagging can occur, which is why we have a plain error rule. That is, counsel stays quiet and then comes back later and says, oh, court, you should have done that. And that's an error. While counsel could, by saying, court, tell me more, avoid that. And that's a sandbagging that the plain error rule, if nothing else, is there to avoid. Well, respectfully, to both of your honors... I don't mean it happened in this case, but it means why we apply the plain error rule. I think that's correct, Your Honor. The purpose of the plain error rule is to avoid sandbagging, which is why, for example, in the cases cited by the government, this court applied plain error when the relevant request was never made to the district court. But here is a situation where the request was specifically made, the basis was cited, and that's precisely what this court held sufficient in Olmeda. Again, there, the exact same situation happened where the defendant made the request for a concurrent sentence, citing the policy statement. The district court briefly inquired as to the status of the trial proceedings and then simply imposed a consecutive sentence without further explanation. This court still treated the issue as preserved for review. I see I'm over my time. I'm happy to address the other issues if Your Honors would like. Well, you've saved some substantial time for rebuttal, so we'll see you again. Thank you, Your Honors. And meanwhile, we'll hear from Mr. Lightenberg. I have the unfair advantage of having heard his name pronounced a few days ago, so I knew how to say that. We'll hear from you, sir. May it please the court. I'm Jim Lightenberg. I'm an assistant United States attorney in the Southern District of New York, and I represent the United States in this appeal. Judge Torres carefully considered Petaway's youth at the time he committed his prior criminal offenses. She stated that Petaway committed prior robberies in his youth. She stated that he is still a young man. She stated her hope that as he grows into adulthood, he will never commit another violent crime. She stated that she considered his history and characteristics, which plainly included his age. She stated that he had spent much of his own youth in jails demonstrating she knew his prior convictions were committed as a minor. And she stated that she was taking into account any pertinent policy statement, which included the policy statement regarding the defendant's youth. That record was more than sufficient for Judge Torres to show that she considered Petaway's youth at the time of his prior offenses. No other magic words were required. And as Judge Lynch noted, this court entertains a strong presumption that the sentencing judge has considered all arguments properly presented to her and the judge is not required to make specific responses to every argument. And since a plain error was brought up, I'll just address that point. This is directly controlled by Villaforte. In Villaforte, the defendant presented a variety of 3553A arguments below and asked for a below-guideline sentence. The court sentenced the defendant within the guidelines range. And then for the first time on appeal, without objecting below at the time of sentencing, the defendant argued that the judge had failed to adequately consider the 3553A factors and failed to provide an adequate explanation of the analysis. And this court held on both of those arguments that it was subject to plain error review and not relaxed plain error review, rigorous, ordinary plain error review. So the same thing happened here. They may have argued below. They did argue below that the court should consider his use at the time of his prior offenses. But after Judge Torres imposed sentence and explained her rationale, there was no objection. And for the reasons the court has identified, it's important to create an incentive for defendants to object at that point. The court made this clear in Villaforte. Doing so allows, creates an incentive and has people bring things to the court's attention at the time of sentencing so the court can provide a further explanation. That may be. But when I've sat with Judge Nardini, who was a long-time prosecutor, he often would say, but wouldn't it be helpful if the government in situations like that would say to the court, can you say a little more? I don't mean it's required. But after all, it could be done. And avoid some of these appeals. Well, here that was totally unnecessary, Your Honor, because as I explained, Judge Torres described at length over and over again her consideration of the defendant's use at the time of his prior offenses. So you say it's not even a matter of plain error. No error at all. Well, it's certainly no error at all for the reasons I explained. But plain error should apply under Villaforte. If there are no further questions, I will ask that the judgment be adjourned. Thank you, counsel. Mr. Chandran, we'll hear from you again. You have three minutes reserved. Thank you, Your Honors. Just to start on the plain error point in Villaforte, I think Villaforte is a different situation than this, because at the trial level, trial counsel only argued for a variance on the basis of 3553A1 by citing the history and circumstances of that defendant rather than making a separate argument about the need to consider other factors as well. That was the basis for this court's finding that the issue wasn't preserved properly for appeal. Here, by contrast, the exact issue that's being advanced here is the consideration of the policy statement that Mr. Pettoway specifically put before the sentencing court. So I think Villaforte is distinguishable, and this case is thus more akin to Olmeda. On whether the district court's references to Mr. Pettoway's offense conduct in his youth and the fact that he had spent some of his youth in prison were sufficient to show adequate consideration. I think they weren't, and I think that's where Delgado and Singh provide helpful guideposts for this court in terms of what it means to give respectful consideration to someone's youth at the time of commission of an offense. There, the court clearly held that the error is in perhaps overstating the seriousness of a prior offense in light of a juvenile non-homicide offender's capacity for change. I think that's from Singh. And in Delgado, this court said it's not enough to simply know or reference the fact that someone is a juvenile. And that's because age, as the Supreme Court has made clear, is far more than just a chronological fact. It has real implications for culpability, for capacity for change, and the overall need for an aggregate sentence. What about the electronic search and supervised release? We've gotten 28 J letters, but that's never been mentioned. Yes, thanks, Your Honor. So if I can pivot to those points, I think both the electronic search condition and the drug treatment condition in this case lacked any individualized assessment that bore a nexus to Mr. Peddoway. So the electronic search condition here was premised simply on the possession of the firearm and the general need to protect the public. Neither one of those conditions is individualized because both by definition would apply to any case of a 922G or a 924C. And this court has... We have recently upheld some of those in cases where there was nothing electronic but where there was a long history of crime. Your suggestion, I take it, that here we don't have that or at least have it only when he was a child and so that we must at least, for that, put it in the queue where that is being discussed. Right. I think that's right, Your Honor. This court has never upheld the condition based purely on the number of past offenses. In Thompson, which was the case cited in the government's 28-J letter from Friday, this court noted that it was both the history of recidivism and the nature of those past offenses. So it's both a quantitative and a qualitative assessment. And particularly in that case, I believe... Anyway, we have a whole lot of cases that are waiting to deal with that. So you say that should wait. That's correct, Your Honor. And I just point this court to its decision in Jimenez where based purely on the fact of four prior convictions, this court found that a search condition was not appropriate. So here, where Mr. Pettoway has three prior convictions and they're from a far more remote period in time than the convictions in Jimenez were, there's no basis for upholding the condition. How individualized does the review have to be? I've always been puzzled by this. If there is a factor which justifies doing something, you look at the person and you say, gee, factor X tells me that I should impose this condition. Isn't the question for the Court of Appeals whether that fact does or does not justify it? I mean, the idea... It wasn't individualized because that would apply to a lot of people. We said factors... Yeah, and in every one of those cases, I would have done the same thing because I think that this factor is alone sufficient. So isn't it really a question of the substantive validity of the reason that was given? I would say two things today, Your Honor. First, yes, it's about substantive validity, but the substantive validity has to be something that is not categorically applicable to a particular offense. But why on earth would that be? It was murder. If someone committed a murder and gets a 20-year sentence and supervised release afterwards, and the judge imposes, I guess the electronic search might not be the best example, but imposes something that says murder is... Anybody who's convicted of murder, I think, requires this kind of supervision. The generalized search condition says search condition didn't include an electronic component. I do this in any case of a violent crime. I think that's self-evident that that's appropriate. Why isn't the question whether that's right or wrong? But that would apply to everyone who's convicted of murder, right? I would say, Your Honor, that's precisely what this court rejected in Deutsch and Oliveras. In Oliveras, for example, the district court expressed its view that an electronic search condition would be appropriate in any drug case because, in its view, drug dealers frequently use cell phones or other electronic media to communicate with each other regarding sales or use or other things. And this court specifically said the district court's responsibility to conduct an individualized assessment is not suspended in those cases. And so the individual... Yeah, I'm just wondering what the individual assessment is supposed to consider. Say, okay, there's five more things about this guy. He was born in Brooklyn, but that doesn't change it. He has, you know, this thing in his favor. He's a kind father, but that doesn't change it. You know, what goes into the individual assessment? That's what puzzles me about this whole line of cases. I hear you, Your Honor. And I think there are a variety of things that could go to it, right? I think there's not a specific nexus as I think Judge Calabresi mentioned. There's not a requirement that there has to be the use of an electronic device in the case. But in any event, that issue which Judge Lynch has raised is the issue that is before the court in the prior cases to us. It may well be that the prior cases will say, as Judge Lynch has said, that's enough. But here we are way down on the queue. I think that's right. It has been presented in a number of other cases. And I would just note, Judge Lynch, to your point, there are a variety of things that could be individualized enough to make the condition appropriate. So for example, in Robinson, a case cited by the government, it's the fact that the individual had demonstrated clear difficulties with being honest with law enforcement. There are other cases where there were clear instances of the defendant having difficulties complying with the terms of supervised release or parole. Those kinds of things show additional need for that kind of condition that this court has affirmed. But here we just don't have any. All right. Thank you, counsel. We'll take that matter as well. Under advisement, that concludes our business for the day. With many thanks to our courtroom deputy and our court security officer, we'll stand adjourned. Thank you.